Hillsborough-southern judicial district
No. 94-710

LISA T. ALEXANDER & a.

v.

BLACKSTONE REALTY ASSOCIATES & a.

October 24, 1996

*Bruce E. Barron,* of Salem, by brief and orally, for all plaintiffs except George Duffy.

*Michael, Jones & Wensley,* of Rochester (*Philip S. Rader* on the brief and orally), for plaintiff George Duffy.

*Wadleigh, Starr, Peters, Dunn & Chiesa,* of Manchester (*Robert E. Murphy, Jr.* and *Peter R. Chiesa* on the brief, and *Mr. Chiesa* orally), for the defendants.

BRODERICK, J. Although the Superior Court (*Hampsey,* J.) entered judgment for them, the defendants bring this appeal because the remedy fashioned below allegedly imposes significant and inappropriate financial obligations upon them. The plaintiffs cross-appeal, arguing that the trial court erred in concluding that pertinent condominium documents were ambiguous, in dismissing certain claims, and in fashioning a remedy they neither sought nor desired that makes title to their condominium units unmarketable. We reverse in part, vacate in part, affirm in part, and remand.

The plaintiffs are past and present owners of condominiums in Knightsbridge Arms in Nashua. The defendants are Blackstone Realty Associates (Blackstone), the condominium's declarant; Whitestone Realty Associates (Whitestone), the owner/lessor of the land upon which the condominium units are located; JEF, Inc., the sole general partner of Blackstone; EHF, Inc., the sole general partner of Whitestone; Edward H. Fillmore, president of JEF, Inc. and EHF, Inc., and a limited partner in Whitestone and Blackstone; JoAnn Fillmore, Edward Fillmore's wife and a limited partner in both Whitestone and Blackstone; and Judith Mazur, employed by Blackstone to sell the units. The plaintiffs sued the defendants for violation of the Condominium Act, negligent misrepresentation, and breach of the covenant of seisin in connection with the purchase of their units. Specifically, the plaintiffs alleged that the defendants assured them that they were responsible for the property tax on only their condominiums, not on the underlying leased land. They sought rescission, money damages, and other relief.

The trial court determined that the pertinent condominium documents were ambiguous as to liability for the land tax, and that either Blackstone or Whitestone, or both, were obligated to pay the tax on the leased land. Accordingly, the trial court concluded that

any representations made to the plaintiffs that they would not be responsible for the land tax could not have been misrepresentations. The trial court ordered Blackstone and/or Whitestone to reimburse past and present unit owners for land taxes earlier paid, whether or not they were parties to the litigation. Judgment was entered in favor of all defendants, however, on all claims advanced by the plaintiffs. As a result of the trial court's decision, the plaintiffs remain responsible for paying the property tax on their units while Blackstone and/or Whitestone are responsible for paying the property tax on the underlying leased land. Hence, the plaintiffs must rely upon Blackstone and/or Whitestone to fulfill their obligations to pay the taxes on the leased land upon which the units are constructed. These appeals followed.

The defendants maintain that the trial court erred in ruling that the condominium documents were ambiguous and in ruling on the rights of nonparties to the litigation. The plaintiffs cross-appealed, also asserting that the trial court erred in its ambiguity determination and maintaining that it abused its discretion in fashioning a remedy that no party sought which renders the title to the condominiums unmarketable. Additionally, they argue that the trial court erred in entering judgment for the defendants and in dismissing defendant JoAnn Fillmore individually.

The dispositive issue in this case is whether the trial court erred in ruling that the condominium documents were ambiguous. The controlling language appears in both the lease between Blackstone and Whitestone and the warranty deeds issued by Blackstone to the plaintiff purchasers. We turn first to section 10(a) of the lease:

> The Lessee shall pay and discharge *all real estate taxes*, water rents, sewer charges, levies, betterment assessments (general or special, ordinary or extraordinary), and charges and governmental impositions, duties and charges of every kind and nature whatsoever which shall or may during the term of this Lease be charged, laid, levied or imposed upon or become a lien or liens *upon the leased premises or any part thereof, or upon any buildings or appurtenances thereto, or any parts thereof* . . . .

(Emphasis added.) Additionally, the warranty deeds assigned an undivided one-two hundred eighty-eighth (1/288) interest in the lease and conveyed each unit subject to its terms and provisions.

■ "[T]he proper interpretation of a lease is ultimately a question of law for this court to determine." *Woodstock Soapstone Co. v. Carleton*, 133 N.H. 809, 815, 585 A.2d 312, 315 (1991). As with

any contract, we interpret a lease by giving its terms their reasonable meaning. *Chadwick v. CSI, Ltd.*, 137 N.H. 515, 525, 629 A.2d 820, 827 (1993). Here, the obligation for payment of *all* real estate taxes lies plainly with the unit owners. Through the warranty deeds, Blackstone lawfully assigned and conveyed its lease obligations, which included responsibility for payment of the land tax. The language in the lease is explicit and devoid of ambiguity. That the defendants may have made contrary or inconsistent representations when the plaintiffs purchased their units does not create an ambiguity in the plain language of the condominium documents. Indeed, the trial court expressly noted that "[a]ll counsel to these proceedings . . . acknowledge that the pertinent condominium documents obligate the unit owners to pay their share of the land tax." We concur. Because the documents require the plaintiffs to pay all real estate taxes, including those on the leased land, the trial court erroneously ruled that liability for the land tax was ambiguous and that Blackstone and/or Whitestone were therefore obligated to reimburse unit owners for taxes paid.

Having determined that the condominium documents were ambiguous, the trial court construed them against the defendants, ostensibly to avoid any unreasonable result. *See Holden Eng'g and Surveying v. Pembroke Rd. Realty Trust*, 137 N.H. 393, 397, 628 A.2d 260, 263 (1993). Hence it concluded that "the land tax obligations were never placed upon unit owners." Based on this erroneous conclusion, it ruled that the defendants' representations concerning land tax liability were true and thus could not be "untrue statement[s] of a material fact" in violation of the Condominium Act. RSA 356-B:65, I. In light of our conclusion that the condominium documents squarely placed the obligation to pay land taxes on the unit owners, we reverse and remand to the trial court the issue of the defendants' liability, if any, to the plaintiffs under RSA 356-B:65. Accordingly, the trial court's order on reimbursement is vacated.

■ We next turn to the dismissal of the plaintiffs' claims of negligent misrepresentation and breach of the covenant of seisin. In their negligent misrepresentation claim, the plaintiffs sought "damages in the amount of the reduction in value of the unit proximately caused by the Defendants' negligent misrepresentation." The defendants asserted at oral argument that the trial court dismissed this claim because the plaintiffs failed to offer any evidence of damages. A review of the record supports the defendants' assertion. The plaintiffs' expert witness, a general appraiser with twenty-five years' experience, offered no testimony on the difference between the value of the condominiums burdened with the tax on the leased

land and their purchase price. *See* RESTATEMENT (SECOND) OF TORTS § 552B (1977). Accordingly, the dismissal of this count was proper.

Nor do we find error in the dismissal of the breach of the covenant of seisin claim.

> [T]he term seisin is understood to mean that the grantor is the owner of the estate designated and has good title thereto . . . . It should be noted, however, that the nature of the basic estate which is covenanted must be determined from the terms of the conveyance in general. A person may, for instance, convey only a determinable fee simple or a life estate. In that event, the covenant of seisin merely promises that the grantor was seised of such a lesser estate rather than a fee simple absolute.

6A R. POWELL, POWELL ON REAL PROPERTY ¶ 900[2][a], at 81A-132-33 (P. Rohan ed., 1996). Here the warranty deed clearly conveyed "[a] certain leasehold condominium unit in Knightsbridge Arms," exactly what defendant Blackstone Realty Associates possessed. Consequently, the covenant of seisin was not breached.

■ The plaintiffs also argue that the dismissal of the Condominium Act violation claim against JoAnn Fillmore individually was improper. In order to be liable, she would have had to "materially participate[]" in the disposition of the condominiums and know of the misrepresentations regarding the tax liability. RSA 356-B:65, III. She testified at trial, however, that her only involvement was attending closings, that she never participated in sales of the condominiums, and that she always understood that the owners were responsible for paying the tax on the leased land. The credibility of witnesses is a factual finding left to the sound discretion of the trial court, and we will not disturb this finding unless it is clearly erroneous or unsupported by the evidence. *See Society Hill at Merrimack Condo. Assoc. v. Town of Merrimack*, 139 N.H. 253, 256, 651 A.2d 928, 930 (1994). Based on Fillmore's testimony, the trial court could properly conclude that she did not materially participate, and therefore, we find no error in Fillmore's dismissal. Accordingly, she is not a party to any further proceedings on remand.

*Reversed in part; vacated in part; affirmed in part; remanded.*

HORTON, J., did not sit; the others concurred.