**DUNKIN' DONUTS INCORPORATED,**
Plaintiff,

v.

**NJS, INC., Jamil Saddiqui, Nasim Khan,**
**and Shamin Khan, Defendants.**

No. 94 C 5872.

United States District Court,
N.D. Illinois,
Eastern Division.

June 27, 1995.

William Scott Porterfield, Barack, Ferraz-zano, Kirschbaum & Perlman, Chicago, IL, Stephen Horn, Robert L. Zisk, Schmeltzer, Aptaker & Sheppard, P.C., Washington, DC, for plaintiff Dunkin' Donuts Inc.

James Potter, James Potter, Ltd., Bar-rington, IL, for defendants NJS, Inc., Jamil Saddiqui.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court are the parties' cross motions for summary judgment. For the reasons that follow, Plaintiff's motion for summary judgment is granted, and Defendants' motion for summary judgment is denied.

### FACTS [1]

Defendants NJS, Inc., Jamil Saddiqui, Nasim Khan, and Shamin Khan (collectively "Defendants") are franchisees of Plaintiff Dunkin' Donuts Inc. ("Dunkin"). Defendants entered into a Franchise Agreement with Dunkin in April 1988. In December 1993, Dunkin notified Defendants that they were in default of the Franchise Agreement. After negotiations, on June 2, 1994, the parties entered into a Settlement Agreement ("Settlement"). In the Settlement, Defendants agreed to pay Dunkin $47,500 and to sell the business within 90 days in keeping with certain conditions. The Settlement required Defendants to find a prospective purchaser within 90 days, submit to Dunkin the proposed Purchase and Sale Agreement ("P & S"), then wait for Dunkin's approval to sell. Defendants were required to submit a P & S to ensure that the prospective purchaser met Dunkin's franchisee requirements, and to allow Dunkin an opportunity to buy the store itself on the same terms as the prospective purchaser.

Regarding Dunkin's option to purchase, the Settlement provided, "Nothing herein shall be construed as a waiver of DUNKIN'S right of first refusal under the present Franchise Agreement." (Compl.Attach. 2 ¶ 3.C.) Specifically, the right of first refusal as outlined in the Franchise Agreement provided, in pertinent part, as follows:

> If the FRANCHISEE ... has received and desires to accept a signed, bona fide written offer from a third party ..., the FRANCHISEE ... shall notify and provide DUNKIN' DONUTS with a copy of such offer, and DUNKIN' DONUTS shall have the right and option, exercisable within forty-five (45) days after its receipt of a copy of the offer to purchase the FRANCHISEE'S franchise ... on the same terms and conditions as offered by said third party.

(Compl.Attach. 1 ¶ 10.F.) The Settlement provided that Dunkin would send all notices by personal delivery or by certified mail to Defendants at the address listed in the Settlement.

In their cross motions for summary judgment, the parties agree to the pivotal dates.[2] The date of the Settlement is June 2, 1994. On June 22, 1994, Defendants mailed a P & S. Dunkin received the P & S on June 27, 1994.[3] Two days later, on June 29, Dunkin

---

1. The following facts are taken from the parties' submissions filed pursuant to Rules 12(M) and 12(N) of the Rules of the United States District Court for the Northern District of Illinois ("Local Rules").

2. A summation of the pertinent dates are as follows:

| | |
|---|---|
| June 2 | Settlement Agreement |
| June 22 | Defendants mail P & S |
| June 27 | Dunkin receives P & S |
| June 29 | Dunkin requests Defendants to re-submit P & S |
| July 22 | Defendants mail revised P & S via Federal Express |
| July 25 | Dunkin receives revised P & S |
| Aug 6 | *Expiration of 45 days if starting on June 22 |
| Aug 10 | First notice of intent to exercise the Right of First Refusal sent via Federal Express |
| Aug 11 | *Expiration of 45 days if starting on June 27 |
| Aug 12 | Defendants' letter acknowledging receipt of first notice via facsimile and regular mail |
| Aug 24 | Defendants' letter arguing untimely first notice |
| Aug 26 | Second notice to Right of First Refusal sent via certified mail to the correct address |
| Aug 31 | 90 day Time to Sell expires; N. Khan and S. Khan sign return receipts for second notice |
| Sept 3 | Saddiqui signs return receipt for second notice |
| Sept 8 | *Expiration of 45 days if starting on July 25. |

3. Neither party addressed in their Statements of Undisputed facts on what date Dunkin received the P & S. However, an exhibit attached to the Certification of Jack Laudermilk manifests that Dunkin's attorney received the June 22, 1994, letter along with the initial P & S on June 27, 1994. This fact also is noted in Dunkin's Reply brief.

signed a letter which acknowledged receipt of the P & S and asked Defendants to "[p]lease send ... a duplicate original with all deletions and changes properly initialled to begin processing." On July 25, 1994, Dunkin received the revised P & S. On August 10, 1994, Dunkin sent a letter to Defendants via Federal Express stating that it had chosen to exercise its option granted them under the Franchise Agreement's Right of First Refusal clause. Defendants acknowledged, by letter of August 12, 1994, that they received Dunkin's notice of August 10, 1994. However, in a subsequent letter, dated August 24, 1994, counsel for Defendants asserted that Dunkin had waived its right of first refusal because the August 10 notice was untimely. Furthermore, the letter argued that the August 10 notice was defective in that it violated the Settlement in two ways: (1) delivery should have been by personal delivery or certified mail, not via Federal Express; and (2) the August 10 notice should have been sent to the address listed in the Settlement, not sent to Defendants' franchise store. Although disagreeing that the first notice was invalid, Dunkin forwarded a second notice via certified mail to the suggested address listed in the Settlement on August 26, 1994. On August 31, 1994, counsel for Defendants mailed a letter acknowledging receipt of the second notice and asserted that the second notice was untimely as well. On September 26, 1994, Dunkin mailed a letter terminating both the 1988 Franchise Agreement and the Lease, and demanding Defendants vacate the premises. Thereafter, Defendants continued to tender various franchise fees and rent checks which Dunkin accepted and deposited.

Dunkin's complaint against Defendants consists of two counts and seeks damages and specific performance on the Settlement. Both counts involve breaches of the Settlement. The principal dispute concerns Dunkin's right of first refusal and whether the notice to exercise that option was timely within the contracted 45 day period.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 931 (7th Cir.1994); *Transportation Communications Int'l Union v. CSX Transp., Inc.*, 30 F.3d 903, 904 (7th Cir.1994). Summary judgment is not a discretionary remedy and must be granted when the movant is entitled to it as a matter of law. *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir.1994).

■ Moreover, the disputed facts must be those that might affect the outcome of the suit to properly preclude summary judgment. *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir.1994). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In the case at bar, the court finds that there is no genuine issue as to any material fact; hence, a summary judgment properly may be issued.

Count I of the Complaint alleges that Defendants breached the Settlement by failing to accept Dunkin's option to purchase the franchise on the proposed P & S terms. Both parties agree that Dunkin had 45 days to exercise its right of first refusal. The parties disagree, however, on what date that period began to run and whether Dunkin properly executed its notice within the 45 days.

■ The initial concern is defining which date operates to begin the 45 day period: Defendants' dispatch of the P & S, or Dunkin's receipt of the P & S. As quoted above, the parties specifically contracted not to quell the Franchise Agreement's Right of First Refusal clause; therefore, that clause is still applicable. Concerning the law that governs this issue, the court recognizes a discrepancy between the Franchise Agreement and the Settlement. The Franchise Agreement, in ¶ 17, provides that the law of Massachusetts

shall govern that agreement, whereas ¶ 6.L of the Settlement states that the law of Illinois shall govern it. Nevertheless, absent ambiguity, both States look to the clear language of the contract to gather the parties' intention. *Arrow Master, Inc. v. Unique Forming Ltd.*, 12 F.3d 709, 713 (7th Cir. 1993); *J.I. Corp. v. Federal Ins. Co.*, 920 F.2d 118, 119 (1st Cir.1990) (collecting Massachusetts cases and holding that, absent ambiguity, interpretation must be "according to the ordinary meaning of the words contained in its provisions"); *Jefferson Ins. Co. of New York v. City of Holyoke*, 23 Mass. App. 472, 503 N.E.2d 474, 477 n. 6 (1987). In clear language, the Right of First Refusal clause provided that Dunkin's option was "exercisable within forty-five (45) days after *its receipt* of a copy of the offer to purchase the FRANCHISEE'S franchise...." (Compl.Attach. 1 ¶ 10.F) (emphasis added). Therefore, the date of Dunkin's receipt is controlling, and the issue becomes whether the date of Dunkin's receipt of the original or revised P & S is the operative benchmark.

Defendants submitted the initial P & S in June, but Dunkin's counsel replied in his letter of June 29, 1994, "Please send me a duplicate original with all deletions and changes properly initialled to begin processing." (Laudermilk Certification Ex. B.) Defendants made the requested changes and Dunkin received the revised P & S July 25, 1994. The request of Dunkin's counsel can only be viewed as an exercise in caution, as the changes in the revised P & S were not substantive, only initials were added next to handwritten insertions.

█ The first sub-issue is whether Dunkin had a right to reject the P & S as it was submitted. The Settlement clearly shows that Dunkin may require both the current franchisee and the prospective franchisee to comport with such technicalities before the transaction becomes effective:

> FRANCHISEES and the prospective purchaser of the Franchise shall comply with all of the ... procedures and documentation, as may be modified herein, generally used by DUNKIN' in such transactions.

(Compl.Attach. 2 ¶ 3.B.) Therefore, assuming that the act of initialing is Dunkin's general procedure, Dunkin's counsel acted properly when he required that the P & S be initialed.

█ The second sub-issue is whether the rejection "tolled" the 45 day period until the revised P & S was received. In other terms, whether asking Defendants to initial the document, as Dunkin may require, invalidated the initial P & S for purposes of the 45 day period. Certainly, the parties did not contract to starting the 45 day period upon receipt of a form P & S with blanks not filled in. Rather, the parties contracted that the Right of First Refusal period would begin to run once a completed P & S was received. Again, ¶ 3.B is instructive. The Settlement manifests that the parties contracted to complying with all procedures and documentation generally used by Dunkin in such transactions. In effect, given Dunkin's reasonable procedures, the initial P & S was an incomplete document. Therefore, Defendants did not comply with the Settlement agreement when they submitted a document which was not initialled. (*See* Compl.Attach. 2 ¶ 3.B.) As such, the 45 day expiration period of the Right of First Refusal clause did not begin to run until Dunkin received the properly initialed P & S.

Since Dunkin received the initialed P & S on July 25, 1994, (Compl.Attach. 4), the 45 days expired on September 8, 1994. Dunkin sent Defendants two notices.[4] Both notices were mailed before September 8, 1994. Furthermore, the record demonstrates that Na-

---

4. Dunkin initially sent Defendants notice that it was exercising its option on August 11, 1994. Defendants' counsel complained in a letter dated August 12, 1994, that, although he received the correspondence, Dunkin did not tender the notice in manner agreed upon in the Settlement. Dunkin sent the first notice via Federal Express to the store itself. The Settlement provided that, "All notices hereunder by DUNKIN' shall at DUNKIN'S option be personally delivered or sent by certified mail to FRANCHISEES at the address set forth below...." (Compl. ¶ 6.H.) In reaction to Defendants' objections, Dunkin's counsel chose, again in an exercise of caution, to send a second notice. Dunkin properly mailed the second notice via certified mail and sent it to the appropriate address.

sim Khan and Shamin Khan signed the return receipts on August 31, 1994, and Jamil Saddiqui signed the return receipt on September 3, 1994. Accordingly, since Defendants received Dunkin's properly executed second notice before the expiration of the 45 day period, Dunkin timely executed its option to purchase the franchise.

■ The last argument which Defendants assert is that Dunkin waived its right to purchase the franchise by accepting rent checks subsequent to September 1994. The Settlement expressly contains a non-waiver provision: "Subsequent acceptance by DUNKIN' of payments due to it under this Agreement shall not be deemed to be a waiver by DUNKIN' of any preceding breach by FRANCHISEES of any terms, covenants, or conditions of the Agreement." (Compl.Attach. 2 ¶ 6.G.) Therefore, Dunkin did not waive any rights by accepting payments from Defendants.

*CONCLUSION*

In sum, since Dunkin properly performed its option to purchase the franchise and did not waive any of its rights, Dunkin's motion for summary judgment is granted as to Count I. Moreover, because the court grants summary judgment on Count I, Count II's allegation that Defendants failed to sell the franchise within 90 days is moot. Accordingly, Dunkin's motion for summary judgment is granted, and Defendants' motion for summary judgment is denied.

IT IS SO ORDERED.